```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

**DEEANNA B. LEWIS,**

       Plaintiff,

  vs.                                      Civil Action 2:13-cv-515
                                            Judge Watson
                                            Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.

<u>**REPORT AND RECOMMENDATION**</u>

**I. Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is now before the Court for consideration of *Plaintiff Deeanna B. Lewis' Statement of Errors* ("*Statement of Errors*"), Doc. No. 13, and the Commissioner's *Opposition to Statement of Errors* ("*Commissioner's Response*"), Doc. No. 14. Plaintiff has not filed a reply.

Plaintiff Deeanna B. Lewis filed her applications for benefits on December 2, 2009, alleging that she has been disabled since January 1, 2006. *PAGEID* 233, 237. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on September 15, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Richard P. Oestreich, Ph.D., who testified as a vocational expert. *PAGEID* 98, 144.  In a decision dated November 8, 2011, the administrative law judge concluded that plaintiff was not disabled from January 1, 2006, through the date of the administrative decision. *PAGEID* 78-92.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 5, 2013.  *PAGEID* 56-59.

Plaintiff was 42 years of age on the date of the administrative law judge's decision.  *See PAGEID* 92, 233.  She has a limited education, is able to communicate in English, and has past relevant work as a telephone information clerk, data entry clerk, telemarketer, and general clerk.  *PAGEID* 90, 145.  Plaintiff was last insured for disability insurance benefits on December 31, 2012.  *PAGEID* 80.  She has not engaged in substantial gainful activity since January 1, 2006, her alleged date of onset of disability.  *Id*.

## II. Medical Evidence

Plaintiff began treating with Ritu Madan, D.O., on July 31, 2009. Plaintiff reported widespread, continuous pain and achiness, primarily in the lower half of her body.  *PAGEID* 348.  Plaintiff's symptoms had been present for at least 14 years, but the pain had worsened over the previous four years.  *Id*.  Upon examination, Dr. Madan noted tenderness in 18 of 18 tender points, normal range of motion in the wrists, and no synovitis in the hands.  *PAGEID* 349.  Dr. Madan

diagnosed fibromyalgia, insomnia, and depression with anxiety. *PAGEID* 347. On December 7, 2009, Dr. Madan noted that physical therapy and chiropractic treatments had provided no benefit and that plaintiff still complained of chronic "achey, nagging pain." *PAGEID* 350-51. Upon examination, plaintiff was again very tender in 18 out of 18 tender points, but she had normal range of motion in her elbows and wrists and no synovitis in her elbows or hands. *PAGEID* 351. In January 2010, Dr. Madan noted that plaintiff had diffuse tenderness in her hands and wrists and tenderness in 18 of 18 tender points, but normal range of motion and no synovitis in the elbows. *PAGEID* 543-44. Dr. Madan made similar findings on April 7 and July 30, 2010. *PAGEID* 553-54; 655-57.

    J. Mark Hatheway, M.D., evaluated plaintiff on November 23, 2009, "for evaluation of problems with pain, numbness and tingling in both hands and right knee and leg pain." *PAGEID* 357, 452. Upon examination, Dr. Hatheway noted intact neurovascular function in both upper extremities except for some hypesthesia to soft touch in the thumb, index and long fingers in both hands. *Id*. Plaintiff had no thenar atrophy; motor strength testing was normal throughout her upper extremities, Phalens test was negative, and Tinels sign was negative over the carpal tunnel area. *Id*. Dr. Hatheway commented that plaintiff's symptoms were "suggestive of bilateral carpel tunnel syndrome." *PAGEID* 358. Dr. Hatheway scheduled an EMG and provided plaintiff carpal tunnel splints. *Id*. However, EMG and nerve conduction studies of plaintiff's upper extremities conducted the

following month were "[b]asically" "normal."  *PAGEID* 453.  *See also* *PAGEID* 457-58.

William S. Pease, M.D., examined plaintiff on August 17, 2011, *PAGEID* 723-27, and noted tenderness in the radial area and snuff box of plaintiff's hands/wrists, bilaterally, but normal range of motion and strength in her wrists and elbows.  *PAGEID* 726.  Plaintiff also had positive trigger points in her "upper trap, lev scap, rhomboids bilat, lumbar PS near PSIS."  *PAGEID* 727.

Plaintiff began psychological treatment by George Serednesky, Ph.D., on November 25, 2009.  *PAGEID* 383.  On January 29, 2010, Dr. Serednesky completed a mental status questionnaire in which he diagnosed an adjustment reaction, NOS, and opined that plaintiff was "somewhat limited" in her ability to remember, understand, and follow directions and to maintain attention; moderately limited in her ability to sustain concentration, persist at tasks, and complete them in a timely fashion; plaintiff had limited social interest, low frustration tolerance and limited coping skills.  *PAGEID* 384.

Dr. Serednesky completed a second Mental Status Questionnaire on May 13, 2010.  *PAGEID* 523-25.  According to Dr. Serednesky, plaintiff had difficulty concentrating and maintaining attention; struggled with short term memory; had moderate limitations in maintaining attention, moderate to severe limitations in sustaining concentration, persisting at tasks, and completing them in a timely fashion; and had reduced social interest and difficulty managing stress.  *PAGEID* 523-24.

4

On September 12, 2011, Dr. Serednesky opined, "I feel that Mrs. Lewis is unable to obtain full-time employment at this time due to her mental capacity." *PAGEID* 769. Dr. Serednesky further opined that plaintiff was markedly limited in her ability to demonstrate reliability and moderately limited in her ability to deal with work stress, maintain attention/concentration, understand, remember, and carry out complex job instructions, understand, remember and carry out detailed (not complex) job instructions, behave in an emotionally stable manner and relate predictably in social situations. *PAGEID* 770-71.

Joan Williams, Ph.D., a state agency psychologist, reviewed the record and completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique form on February 8, 2010. *PAGEID* 426-443. According to Dr. Williams, plaintiff was moderately limited in her ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and (5) interact appropriately with the general public. *PAGEID* 426-27. Dr. Williams opined that plaintiff can "complete simple, routine tasks in a setting with few changes, no public interaction, and no strict time or production demands." *PAGEID* 428. Todd Finnerty, Psy.D., another state agency psychologist,

reviewed the record and, on July 5, 2010, affirmed Dr. Williams' assessment. *PAGEID* 570.

Elizabeth Das, M.D., reviewed the record for the state agency and, on March 8, 2010, completed a Physical Residual Functional Capacity Assessment. *PAGEID* 444-451. According to Dr. Das, plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. *PAGEID* 445. Dr. Das further opined that plaintiff could frequently stoop, kneel, and climb ramps and stairs, but could only occasionally climb ladders, ropes, and scaffolds. *PAGEID* 446. Dr. Das' assessment was affirmed by Michael Stock, M.D., on July 7, 2010. *PAGEID* 571.

Plaintiff treated with Charmaine Blair, M.D., for a variety of ailments from July 1, 2010 to at least March 29, 2011. *PAGEID* 625-54. On September 13, 2011, Dr. Blair diagnosed asthma, fibromyalgia, chronic fatigue, vitamin B12 deficiency, osteoporosis, peripheral neuropathy, anemia, high cholesterol, vitamin D deficiency, hyperthyroidism, lumbar spine DJD, foraminal narrowing, lumbar spine DDD, and chronic bilateral knee pain. *PAGEID* 773. Dr. Blair also provided the following opinion:

> [Plaintiff's] mobility is poor and limited due to trigger point discomfort, decreased strength and neuropathic pain. Her sleep is affected and the patient is chronically fatigued. Despite her compliance with her regimen she has not improved clinically. Her symptoms have worsened over the years. . . . I do not foresee any way that this patient will be able to work in any meaningful, sustainable capacity. A number of her required medications are also

6

> sedating and will preclude her ability to function or drive safely.  I recommend that her disability be continued.

*Id*.

### III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of "fibromyalgia, sciatica, lumbar degenerative disc disease, osteoporosis, right knee degenerative joint disease stats post knee surgery, asthma, insomnia, anxiety disorder, and adjustment reaction, NOS."  *PAGEID* 81.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is unable to climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs as well as occasionally stoop, kneel, crouch, and crawl.  Additionally, the claimant can frequently push, pull, and operate foot pedals with the right lower extremity.  She must avoid concentrated exposure to pulmonary irritants such as odors, dusts, fumes, gases, and poorly ventilated areas.  She must avoid working outside in the elements.  Moreover, she must avoid exposure to hazards such as working at unprotected heights, working around dangerous moving machinery, and driving as a part of work.  Furthermore, the claimant is limited performing simple, routine, no more than three- to four-step tasks in a setting with no more than occasional change, no fast-paced production or strict time quotas, and with no interaction with the general public.

*PAGEID* 81-84.  Although this RFC precluded plaintiff's past relevant work as a telephone information clerk, data entry clerk, telemarketer, and general clerk, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff was able to perform a significant number of jobs in the national economy,

including such jobs as hand packer, inspector, and assembler. *PAGEID 90-91*. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2006, through the date of the decision. *PAGEID 92*.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

Plaintiff argues, *inter alia*, that the administrative law judge erred in evaluating the medical opinion of plaintiff's treating provider Dr. Blair.[1]  *Statement of Errors*, pp. 11-12.  The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting

---

[1] Plaintiff also argues that the administrative law judge erred in applying an "improper diagnostic standard for fibromyalgia, and essentially ignor[ing] the severity and functional impact of this impairment[,]" improperly evaluating plaintiff's credibility with respect to her fibromyalgia-related symptoms and limitations, in finding that carpel tunnel syndrome was not a severe impairment, "in failing to incorporate any upper extremity limitations in his RFC assessment," in posing an incomplete hypothetical to the vocational expert, in failing to obtain testimony from a medical expert, and in evaluating the opinion of Dr. Serednesky.  *Statement of Errors*, pp. 8-14.  Because the Court concludes that the matter must be remanded for further consideration of Dr. Blair's opinion, the Court need not and does not consider plaintiff's remaining contentions.

the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff treated regularly with Dr. Blair from July 1, 2010, through at least March 29, 2011.  *See* PAGEID 625-54.  On September 13, 2011, Dr. Blair diagnosed asthma, fibromyalgia, chronic fatigue, vitamin B12 deficiency, osteoporosis, peripheral neuropathy, anemia, high cholesterol, vitamin D deficiency, hyperthyroidism, degenerative joint disease of the lumbar spine, foraminal narrowing, degenerative disc disease of the lumbar spine, and chronic bilateral knee pain. PAGEID 773.  Dr. Blair also provided the following medical opinion:

> [Plaintiff's] mobility is poor and limited due to trigger point discomfort, decreased strength and neuropathic pain. Her sleep is affected and the patient is chronically fatigued.  Despite her compliance with her regimen she has not improved clinically.  Her symptoms have worsened over the years. . . .  I do not fore see any way that this patient will be able to work in any meaningful, sustainable capacity.  A number of her required medications are also sedating and will preclude her ability to function or drive safely.  I recommend that her disability be continued.

*Id*.

The Commissioner does not contest that Dr. Blair is a treating source.[2] *See Commissioner's Response*, p. 9. Instead, the Commissioner argues that the "conclusory statement from Dr[.] Blair . . . that Plaintiff was disabled [is] not [a] medical opinion[] entitled to any deference." *Id*. at p. 11. Specifically, the Commissioner argues that Dr. Blair's opinion is a conclusory opinion of disability that is properly reserved to the Commissioner. *Id*. The Commissioner's arguments are without merit.

The administrative law judge evaluated and rejected Dr. Blair's opinion as follows:

> Dr. Blair opined that the claimant cannot work in any meaningful, sustainable capacity on September 13, 2011. . . . . Statements that a claimant is "disabled", "unable to work", can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such administrative findings are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. These opinions can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. Therefore, the undersigned has considered the statements of Dr. Blair . . . but given them no weight.

*PAGEID* 89.

The administrative law judge referred to only one sentence in Dr. Blair's statement but, based on that one sentence, expressly found that Dr. Blair's entire statement did not qualify as a "medical

---

[2] A treating source is a "medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502; 416.1502.

11

opinion."  A "medical opinion" is a statement from an acceptable medical source, such as a treating source, "that reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Dr. Blair's September 13, 2011 statement constitutes a "medical opinion" because it reflects judgments about the nature and severity of plaintiff's symptoms, diagnoses, and prognoses, and it opines on the nature of the limitations resulting from plaintiff's symptoms and medications.  The Commissioner's arguments to the contrary notwithstanding, Dr. Blair's medical opinion is not merely a "conclusory statement" of disability.  *See Commissioner's Response*, p. 11.

The administrative law judge's cursory consideration of Dr. Blair's medical opinion is not sufficient to satisfy the requirements of 20 C.F.R. §§ 404.1527(c) and 416.927(c).  *Compare* 20 C.F.R. §§ 404.1527(c), 416.927(c) (requiring the administrative law judge to evaluate every "medical opinion"), *with* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  The administrative law judge made no reference to Dr. Blair as a

12

treating source, he expressly found that Dr. Blair did not provide a "medical opinion," and he failed to expressly consider the factors required by *Wilson*. The administrative law judge simply has not provided good reasons for discounting Dr. Blair's medical opinion. *See Rogers*, 486 F.3d at 242. Although the RFC determination is an administrative finding of fact reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004), an administrative law judge is nevertheless required to evaluate every medical opinion, regardless of its source, in making that determination. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The administrative law judge in this case gave no consideration whatsoever to Dr. Blair's medical opinion. The Court therefore concludes that the matter must be remanded for further consideration of Dr. Blair's opinion.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** for consideration of the medical opinion of Dr. Blair.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections

must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


December 16, 2013                             *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                          United States Magistrate Judge

14